**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CARLA A. HUBBS, | ) |
| on behalf of herself and a class and subclass, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WELTMAN, WEINBERG & REIS CO., L.P.A., | ) |
| and DATA SEARCH NY, INC., d/b/a | ) |
| TRAK AMERICA, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1.      Plaintiff Carla A. Hubbs brings this action to secure redress against unlawful collection practices engaged in by defendants Weltman, Weinberg & Reis Co., L.P.A. ("WWR") and Data Search NY, Inc., d/b/a Trak America ("Trak America").   Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods;  conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.      The ICAA reflects a determination that "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is further declared to be the public policy of this State to protect

1

consumers against debt collection abuse." 225 ILCS 425/1a.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. §§1331 and 1337 and 1367 and 15 U.S.C. §1692k (FDCPA).

5.     Venue in this District is proper because defendants' collection activities took place in this District.

## PARTIES

6.     Plaintiff is a resident of Chicago, Illinois.

7.     Defendant WWR is a law firm organized as a corporation under Ohio law. It has offices at 180 N. LaSalle Street, Suite 2400, Chicago, Illinois 60601. Its registered agent and office is National Registered Agents, Inc., 200 W. Adams St., Chicago, IL 60606.

8.     Defendant WWR is in the business of attempting to collect alleged delinquent consumer debts owed to others, and uses the mails and telephone system for that purpose.

9.     Defendant WWR is a "debt collector" as defined in the FDCPA.

10.     Defendant Data Search NY Inc., doing business as Trak America ("Trak America") is a New York corporation. Its registered agent and office is CT Corporation System, 111 Eighth Avenue, New York, NY 10011. It maintains offices at 6851 Jericho Turnpike, #190, Syosset, NY 11791.

11.     Defendant Trak America is in the business of attempting to collect alleged delinquent consumer debts owed to others, including Capital One.

12.     Defendant Trak America is a legal management company that causes lawsuits to be filed against consumers, and uses the mails and telephone system for that purpose.

13.     At one time, Trak America described its business activities on its web site (www.trakamerica.com) as follows:

Welcome to the proven nationwide legal process that has recovered millions of

dollars thought to be unrecoverable for the country's largest creditors and debt buyers.

Step 1: Our FASTRAK predictive model determines with unparalleled accuracy exactly which accounts are worth pursuing.

Step 2: Secure, streamlined and automated processes transmit suit worthy accounts to the right attorney quickly and efficiently.

Step 3: The TRAKAmerica legal network-the best in the business-obtains your legally enforceable judgments.

Step 4: Our in-house skip tracing experts facilitate execution on your judgments by identifying hard-to-find assets and collecting the money owed to you.

Result: Maximum net back for TRAKAmerica clients.

"TRAKAmerica recovered more than $27 million last quarter on warehouse paper we thought was uncollectible." ----- Publicly traded US credit card issuer

14.     The same web site further stated:

TRAKAmerica is a rapidly growing legal network management company founded in 2000. With its unique approach, the company has been able to recover millions of dollars previously believed to be unrecoverable for some of the most astute lenders in the world. The company's success is built on a nationwide network of local attorneys combined with a rigorous analytic approach to managing thousands of accounts.

TRAKAmerica's unique advantage is the FASTRAK predictive model built on empirical data from more than one million claims and nearly $100 million in court costs in all fifty states. Combining FASTRAK with vigorous attorney management maximizes net back for TRAKAmerica's clients.

15.     The same web site further stated:

Disciplined Attorney Management

To keep our attorneys as productive as possible TRAKAmerica takes a hands-on approach. With over 125 firms nationwide in our network, TRAKAmerica treats legal management as a high volume production operation. We follow a streamlined management process to get your accounts into the courts faster.

From our database of more than a million claims we know exactly what to expect in terms of suit and judgment rates, and we manage our attorneys to these expectations. Overall performance is managed at the batch level and reviewed weekly. Work assignments are reviewed frequently and business shifts are made based on performance. Because FASTRAK indicates which accounts to sue, we only forward productive accounts to our attorneys, with the cut-off calibrated by client to achieve individual client IRR and net back goals. As a result, our attorneys don't waste their time and your money on unproductive cases.

3

16.    The same web site further stated:

Step 2: Getting To Court Quickly and Efficiently

Once we've run your portfolio through our model and reviewed the net back projections, our TRAKAmerica team designs a complete recovery plan based on your requirements.

First, we prepare your portfolio for our attorney network by identifying suit worthy accounts and skip tracing them for accuracy (addresses, names etc.). As we verify information, we also attempt to collect from these accounts on your behalf.

As a legal network, we can use legal talk off language in these conversations, which often means debtors agree to a payment plan rather than face the legal process.

This immediately creates cash flow for you and also helps fund court costs on accounts that ultimately will go through the legal process.

Step 3: The TRAKAmerica Legal Network

On day 31, we electronically disburse your files to our network attorney .  They load your files into their systems and instantly send demand letters. After the 30-day validation period expires, our attorneys sue those individuals who have not responded to their demand letters. Results are electronically posted and delivered to our offices each week. It's an entirely transparent system for full accountability. Each week, our management team examines exception reports that reflect which accounts arc still outstanding. The report includes:

    legal suit dates

    service dates

    court information

    judgment information (principle [sic] and interest)

    court costs

    attorney fees

Our clients have the option of connecting electronically to our reporting system so they can check on the status of their portfolio at anytime. Our collection firms also follow our no-fail data security measures,  including firewall intrusion detection software, encryption, and stringent internal security control systems. At this stage, our TRAKAmerica team has obtained judgments on your bad debt accounts. We dedicate our efforts and resources-including in-house skip tracing and asset location programs-to collecting the money owed to you.  Skip and asset information is promptly supplied to our attorneys so they can devote their time to collecting from bank accounts, garnishing paychecks, and placing liens on properties.

We are no longer requesting money from debtors - we are actively taking it....

17. The web site is no longer active, but on information and belief Trak America continues operating according to the same business model.

18. Defendant Trak America is a "debt collector" as defined in the FDCPA.

19. Defendant Trak America is a collection agency as defined in the ICAA.

### FACTS RELATING TO PLAINTIFF

20. On or about November 21, 2006, a lawsuit was filed in the name of Capital One Bank against plaintiff Carla Hubbs in the Circuit Court of Rock Island County, Illinois. Plaintiff then lived in northwestern Illinois. The complaint sought to collect $5686.66 plus attorney's fees on a Capital One credit card account ending in 9958. A copy of the court file is in Appendix A.

21. The attorney for the plaintiff was WWR.

22. The complaint was verified by one Sara Rubin, an officer or employee of Trak America, not Capital One.

23. Ms. Hubbs disputed the debt and appeared pro se in the Rock Island County case. The matter was set for trial on February 7, 2007.

24. On February 7, 2007, the Rock Island County Circuit Court entered the following order:

> DEF PRO SE. MOTION TO CONTINUE BY PLT SAYS PLT SAID WIT[NESS] NOT AVAILABLE CONTINUE AFTER 3/21/07. BUT PLT SET THIS . ATTY JACKSON NO REASON WHY PLT PICKED A "BAD" DATE AND NO REASON WHY NO MOTION TO CONTINUE WAS FILED BEFORE TODAY. NO EVIDENCE OF DUE DILIGENCE TO GET WITNESS HERE. MOTION TO CONTINUE IS DENIED. CASE ID [IS] DISMISSED.

25. On or about August 3, 2009, WWR filed another lawsuit on the same alleged credit card account ending in 9958 against Ms. Hubbs, this time in the Circuit Court of Cook County, Illinois, case 09 M1 163040. Ms. Hubbs had moved to Cook County in the interim. The plaintiff was again Capital One Bank. This time the complaint sought $9,010.13.

5

26.     Attached to the complaint was a statement showing that the account was in default no later than March 4, 2003, more than 6 years prior to the filing of the Cook County complaint.  (Again, plaintiff disputes any liability on the account.)

27.     The Cook County complaint and exhibits are attached as <u>Appendix B</u>.

28.     The alleged debt that was the subject of the Cook County action was no longer enforceable through legal action as a result of the expiration of the five-year statute of limitations, 735 ILCS 5/13-205. *Portfolio Acquisitions, LLC v. Feltman*, 391 Ill. App. 3d 642; 909 N.E.2d 876 (1st Dist. 2009);  *Nicolai v. Mason,* 118 Ill.App.3d 300, 454 N.E.2d 1049 (5th Dist. 1983); *Parkis v. Arrow Financial Services,* No. 07 C 410, 2008 U.S.Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Ramirez v. Palisades Collection LLC,* No. 07 C 3840, 2008 U.S.Dist. LEXIS 48722 (N.D.Ill. June 23, 2008).  Furthermore, the running of the statute was not tolled by the Rock Island case, since Illinois requires refiling within one year to avoid a statute of limitations bar.

29.     On or about September 28, 2009, WWR sent plaintiff the letter attached as <u>Appendix C</u>, stating that "this firm has filed a lawsuit against you on behalf of the client referenced above."  The "client referenced above" was Trak America.

30.     On  information and belief, WWR meant to identify the client as Capital One, but inadvertently inserted Trak America in <u>Appendix C</u> because it in fact treated Trak America and not Capital One as the client.

31.     <u>Appendix C</u> refers to the same debt that was the subject of the two lawsuits, and references the account number ending in 9958.

32.     On information and belief, Trak America was controlling and managing the prosecution of both the Rock Island and Cook County lawsuits.

33.     Ms. Hubbs appeared and defended the Cook County case.

34.     WWR nonsuited the Cook County case when it was called for trial on Jan. 12, 2010.

6

35.     Ms. Hubbs was damaged, as a result of the expenditure of time and money in defending the lawsuits.

## FACTS – GENERAL

36.     The manner in which Trak America conducts its business is contrary to Illinois law.  The ICAA,  225 ILCS 425/8a-1(a), provides that "No account may be referred by a collection agency to an attorney unless, prior to placing an account with an attorney for further collection action, each account creditor is notified in writing by the collection agency of the collection agency's intent to refer the account to an attorney. The account may not be referred to an attorney if a creditor notifies the collection agency within 5 days after receiving the notice that the creditor is withholding authorization for the account to be referred to an attorney. The notice requirement under this subsection may, in the alternative, be satisfied if the creditor signs the complaint that will be filed in the circuit court seeking judgment on the debt owed. <u>A collection agency shall not take any action that in fact or in appearance interferes with the professional relationship between the attorney and the creditor.</u>"  (Emphasis added) A parallel prohibition, excluding *lawful* conduct by a collection agency, is established by the Corporation Practice of Law Prohibition Act, 705 ILCS 220/1 et seq.

37.     In fact, the professional relationship is entirely between Trak America and WWR.  WWR receives instructions from Trak America, and Capital One communicates with Trak America, not WWR.

38.     On information and belief, both WWR and Trak America receive contingent compensation based on accounts recovered.

39.     On  information  and belief, this interference by laypersons with the professional relationship  results in irresponsible and improper conduct in connection with the prosecution of collection lawsuits, including the filing of time barred lawsuits, the setting of cases for trial when the creditor cannot appear, and skip tracing errors.

## COUNT I – FDCPA – INDIVIDUAL CLAIM

40.     Plaintiff incorporates paragraphs 1-39.

41.     WWR engaged in both a deceptive practice and an unfair practice, in violation of the FDCPA, 15 U.S.C. §§1692e and 1692f, by filing legal action on time-barred debts.  *Kimber  v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).

42.     Trak America engaged in both a deceptive and unfair practice by causing WWR to file the time-barred lawsuit.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

      (1)     Statutory damages;

      (2)     Actual damages;

      (3)     Attorney's fees, litigation expenses and costs of suit;

      (4)     Such other or further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT – INDIVIDUAL CLAIM

43.     Plaintiffs incorporate paragraphs 1-39.

44.     This claim is against Trak America only.

45.     Defendant Trak America violated the following provisions of 225 ILCS 425/9 by causing the filing of time-barred lawsuits:

> **. . . (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.**

46.     The filing and prosecution of both lawsuits also violated 225 ILCS 425/8a-1(a).

47.     A private right of action exists for violation of the ICAA.  *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

48.     Plaintiff was damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and against defendant Trak America:

(1)     Compensatory and punitive damages;

(2)     Costs;

(3)     Such other and further relief as is appropriate.

### COUNT III – FDCPA – CLASS CLAIM

49.     Plaintiff incorporates paragraphs 1-39.

50.     Trak America engaged in a deceptive practice, in violation of the FDCPA, 15 U.S.C. §1692e(14), when Trak America caused communications, namely the Cook County complaint, to be sent to plaintiff without simultaneous disclosure of Trak America's identity.

51.     Trak America and WWR engaged in an unfair and deceptive practice, in violation of the FDCPA, 15 U.S.C. §§1692e and 1692f, by filing lawsuits in which WWR was receiving instructions and communications from Trak America and not the owner of the account, under circumstances where such conduct was prohibited by state law.

### CLASS ALLEGATIONS

52.     Plaintiff brings this claim on behalf of a class and subclass.

53.     The class consists of (a) all natural persons with Illinois addresses (b) against whom a lawsuit was filed in an Illinois court (c) in a case sent to an Illinois lawyer by Trak America (d) which lawsuit was filed during a period beginning on a date one year prior to the filing of this action and ending 20 days after the filing of this action.

54.     The subclass consists of class members whose cases were sent to WWR.

55.     The class and subclass are each so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the class and subclass.

56.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.  The predominant common questions are (a) whether the nondisclosure of Trak America's involvement violates the FDCPA and (b) whether allowing a lay corporation such as Trak America to direct and manage collection lawsuits under circumstances prohibited by state

9

law and likely to give rise to improper acts harming the persons sued is deceptive or unfair, in violation of the FDCPA.

57.     Plaintiff's claims are typical of the claims of the class members.  All are based  on the same factual and legal theories.

58.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

59.     A class action is superior to other alternative methods of adjudicating this dispute.   Individual cases are not economically feasible.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class against defendant Trak America, and in favor of plaintiff and the subclass, against WWR, for:

(1)     Statutory damages;

(2)     Attorney's fees, litigation expenses and costs of suit;

(3)     Such other or further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\24024\Pleading\Complaint  --  class_Pleading.wpd

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# APPENDIX A

2006SC003063D 001
CAPITAL ONE BANK
VS.                                    FEINGOLD, JEFFREY
HUBBS, CARLA A

| ENTERED | JDG | CR | TEXT | | CHANGED | USER |
|---------|-----|-----|------|---|---------|------|
| 12/05/2006 | | | **Complaint filed on 11/21/2006 | | | BAH |
| | | | Summons ret'd & filed.   (S) Carla Hubbs 12/1 | 54.33 | | BAH |
| 12/08/2006 | MAV | | Matter set for Bench Trial on 2/7/07 at 9:00am | | | WJB |
| | | | Merits hearing set for 2/07/2007 at 09:00 in courtroom 103. | | | WJB |
| 2/07/2007 | CMP | | DEF PRO SE.  MOTION TO CONTINUE BY PLT SAYS PLT SAID WIT NOT | | | VSC |
| | | | AVAILABLE  CONTINUE AFTER 3/21/07.  BUT PLT SET THIS .  ATTY JACKSON | | | VSC |
| | | | NO REASON WHY PLT PICKED A "BAD" DATE AND NO REASON WHY NO MOTION TO | | | VSC |
| | | | CONTINUE WAS FILED BEFORE TODAY.  NO EVIDENCE OF DUE DILIGENCE | | | VSC |
| | | | TO GET WITNESS HERE.  MOTION TO CONTINUE IS DENIED.  CASE ID | | | VSC |
| | | | DISMISSED. | | | VSC |

IN THE CIRCUIT COURT OF THE 14TH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

CAPITAL ONE BANK

06SC3063

          Plaintiff
     vs.

CARLA A HUBBS

          Defendant

* Case no:
*
* Amount Claimed:   $6036.66
* Return Date: Dec 8. 2006   -

## VERIFIED COMPLAINT

Now comes Plaintiff, CAPITAL ONE BANK , by and through its attorneys, Weltman, Weinberg & Reis Co., L.P.A., and Complains of the Defendant , CARLA A HUBBS as follows:

1. Plaintiff, CAPITAL ONE BANK ("Plaintiff") is a NEW YORK corporation authorized to transact business in the State of Illinois.

2. Defendant , CARLA A HUBBS , ("Defendant ") is a resident(s) of the State of Illinois, residing in the County of Rock Island .

3. The Defendant applied for and was granted a credit card account bearing the account number ██████████9958 .

4. By use of the account, the Defendant became bound by the terms and conditions contained in the Cardholder Agreement ("Agreement"). A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit "1".

FILED in the CIRCUIT COURT
of ROCK ISLAND COUNTY
SMALL CLAIMS DIVISION

NOV 2 1 2006

*Lisa L. Bierman*
Clerk of the Circuit Court

REDACTED

5. Defendant made various purchases and/or cash advances on said Account and failed to pay for the same.

6. Plaintiff has exercised its rights pursuant to the terms and conditions of said Agreement to accelerate the time for payment of the entire balance due and owing by Defendant to Plaintiff.

7. Defendant owes Plaintiff the sum of $5686.66 .

8. Plaintiff avers that the Agreement provides for the collection of reasonable attorneys' fees upon default.

9. Plaintiff avers that such attorney fees amount to $350.00.

10. Although demand has been made upon Defendant to pay the balance due and owing, the Defendant has failed or refused to do so.

WHEREFORE, Plaintiff, prays for judgment against Defendant , CARLA A HUBBS in the sum of $6036.66 together with lawful interest and costs.

05412302 C A Chi JLG

WELTMAN, WEINBERG & REIS CO., LPA

Jeffrey Feingold,
Attorney for Plaintiff

Weltman, Weinberg & Reis Co., L.P.A.
10 S. LASALLE ST., SUITE 900
CHICAGO IL, 60603
312-782-9676
FAX: 312-782-4201
CHIATTY@WELTMAN.COM
Atty ID No.: 6785318

This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.

Sara Rubin, being first duly sworn on oath, deposes and says that she is the agent of the plaintiff herein; that she has read the foregoing Complaint; and has knowledge of the contents thereof and that she certifies under oath the same to be true and correct.

_____

Subscribed and sworn to before me
This ___16___ day of __October_____, 2006.

_____
Notary Public

KARL HERNANDEZ
Notary Public State of New York
No. 01HE6108713
Qualified in Suffolk County
Commission Expires July 14, 2007

Weltman, Weinberg & Reis Co., L.P.A.
10 S. LaSalle Street, STE 900
Chicago, IL 60603
Telephone:  312-782-9676
Facsimile:  312-782-9676

*100·427*
*39.33*
*11-21*

## IN THE CIRCUIT COURT OF THE 14TH JUDICIAL CIRCUIT
### ROCK ISLAND COUNTY, ILLINOIS

CAPITAL ONE BANK

**0 6 SC 3 0 6 3**

    Plaintiff

vs.

CARLA A HUBBS



    Defendant

\* Case no:
\*
\* Amount Claimed:   $6036.66
\*
\* Return Date:

**REDACTED**

SUMMONS

To each defendant:

You are hereby summoned and required to appear before this court at *8501*
*Rock Island Co. House, 210 15th St. Box 5230* at _____ *10:00* _____ o'clock **A** M., on
_____ *Dec 8* _____ 200*6*, to answer the complaint in this case, a copy of
which is hereto attached. If you fail to do so, a judgment by default
may be entered against you for the relief asked in the complaint.

To the officer:
This summons must be returned by the officer or other person to whom
it was given for service, with indorsement of service and fees, if any,
immediately after service and not less than three days before the day
for appearance. If service cannot be made, this summons shall be
returned so indorsed.

This summons may not be served later than 3 days before the day
for appearance.

Witness, _____ *11-21* _____ ,20*06*-

_____ *Lisa L. Bierman* _____ -
Clerk of the Court   *USC*
(Seal of Court)

Plaintiff's Attorney (or plaintiff, if he is not represented by
attorney)
WELTMAN, WEINBERG & REIS CO., L.P.A.
Attorney for: Plaintiff
Address: 10 S. LASALLE ST., SUITE 900
City: CHICAGO IL, 60603       05412302 C A Chi JLG
Telephone: 312-782-9676
FAX: 312-782-4201
ARDC Atty ID No: 9676

Date of Service _____ ,20____ (to be inserted by officer on
copy left with defendant or other person).

## SHERIFF'S FEES

Service and/or Return................................... $
Mileage, Postage, and/or Copies.................... $ _54.33_
Total......................................................... $

I certify that I served this _Summons_____ as directed as follows:
(check appropriate box and complete information below)

[✓] **(a) – (Individual – Personal):**
By leaving a copy and a copy of the _Summons_____ with each below-named individual personally.

[ ] **(b) – (Individual – Abode):**
By leaving a copy and a copy of the _____ at the usual place of abode of each below-named individual with a person of his/her family, of the age of 13 years or upwards, informing that person of the contents and also by sending a copy of the _____ in a sealed envelope with the postage fully prepaid, addressed to each such individual at his/her usual place of abode.

[ ] **(c) – (Corporation):**
By leaving a copy and a copy of the _____ with the registered agent, officer, or agent of each such corporation.

[ ] **(d) – (Other Service):**

| | |
|---|---|
| Name of Person _Carla Hubbs_ | Name of Person_____ |
| Name of other Person | Name of other Person |
| Copy given to_____"_____ | Copy given to_____ |
| Sex _F_ Race _W_ Approx. Age _39_ | Sex__ Race_____ Approx. Age____ |
| Place of Service ▓▓▓▓▓▓▓▓ | Place of Service FILED IN THE CIRCUIT COURT of ROCK ISLAND COUNTY SMALL CLAIMS DIVISION |
| ▓▓▓▓▓▓▓▓ | |
| Date of Service _12/01/06_ Time _2050_ | Date of Service DEC 0 5 2006 Time____ |
| Date of Mailing_____ | Date of Mailing _Kathy L. Biermann_ Clerk of the Circuit Court |
| By _J.E. Dar   #6070_, Deputy | By_____, Deputy |

[ ] **(e) – (Not Found):**
The within named_____ not found in this County this _____

Day of _____, 20__. Reason:_____

_____ By _J.E. Door #6070_, Deputy

_____
_____Michael T. Huff_____ Sheriff of Rock Island County.

## RETURN

REDACTED

# APPENDIX B



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

CAPITAL ONE BANK

    Plaintiff,

v.

CARLA A. HUBBS

    Defendant(s),

No.

09M1 102040

Amount Claimed: $9,010.13

Return Date: SEPTEMBER 22, 2009

### COMPLAINT

Now comes the Plaintiff, CAPITAL ONE BANK, by and through its attorneys Weltman, Weinberg & Reis Co., L.P.A., and complains of the Defendant(s), CARLA A. HUBBS, as follows:

1.    Plaintiff, CAPITAL ONE BANK, ("Plaintiff") is a New York corporation authorized to transact business in the State of Illinois.

2.    The Defendant, CARLA A. HUBBS ("Defendant") is a resident of the State of Illinois, residing in the County of Cook.

3.    The Defendant(s) applied for a credit card account with Capital One and subsequently sold its rights and interest to Plaintiff for value.

4.    By use of the account, the Defendant(s) became bound by the terms and conditions contained in the Cardholder Agreement ("Agreement").

5    Defendant(s) made various purchases and/or cash advances on said Account and failed to pay for the same.

6.    Plaintiff has exercised its rights pursuant to the terms and conditions of said Agreement to accelerate the time for payment of the entire balance due and owing by Defendant(s) to Plaintiff.

7.     According to the Account Statement attached hereto and made a part hereof as Exhibit "1", the Defendant(s) owes Plaintiff, the sum of $5261.03 plus accrued interest at the rate of 20.65% per annum through July 27, 2009, in the amount of $3399.10 for a total amount of $8,660.13 .

8.     Plaintiff avers that the Agreement provides for the collection of reasonable attorneys' fees upon default.

9.     Plaintiff avers that such attorney fees amount to $350.00.

10.     Although demand has been made upon Defendant(s) to pay the balance due and owing, the Defendant(s) has failed or refused to do so.

WHEREFORE, Plaintiff prays for Judgment against the Defendant(s), CARLA A. HUBBS, in the principal sum of $5261.03, plus accrued interest through July 27, 2009, in the amount of $3399.10, and attorney fees in the amount of $350.00 for a total amount due of $9,010.13 together with lawful interest and court costs.

BY: _____

Attorney for Plaintiff

WELTMAN, WEINBERG & REIS CO., L.P.A.
180 N. LaSalle Street, Suite 2400
Chicago, Illinois 60601
312–782-9676
Fax: 312-782-4201
Atty. No. 31495
MM INITIAL:MEW

This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.

002

**Capital**One®

# Why does good
## Credit Count?

- Employers check credit references before hiring new people.

- Banks and leasing companies often base the interest rate they offer you on your credit rating.

- Achieving life goals such as buying a new car or owning your own home are facilitated by good credit.

- Credit Bureaus keep information on your record for up to ten years so a credit problem history can follow you around for a long time.

002-1001

---

**Capital**One®

VISA ACCOUNT
9958

JAN 05 - FEB 04, 2003
Page 1 of 1

### Account Summary

| | |
|---|---|
| Previous Balance | $2,973.70 |
| Payments, Credits and Adjustments | $.00 |
| Transactions | $58.00 |
| Finance Charges | $53.10 |
| New Balance | $3,084.80 |
| Minimum Amount Due | $3,084.80 |
| Payment Due Date | March 04, 2003 |
| Total Credit Line | $1,900 |
| Total Available Credit | $.00 |
| Credit Line for Cash | $1,900 |
| Available Credit for Cash | $.00 |

### At your service

To call Customer Relations or to report a lost or stolen card:
**1-800-262-1493**

For free online account service and special customer offers, log on to:
www.capitalone.com

Send payments to:
Attn: Remittance Processing
Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

Send inquiries to:
Capital One Services
P.O. Box 85015
Richmond, VA 23285-5015

### Payments, Credits and Adjustments

### Transactions

| | | | |
|---|---|---|---|
| 1 | 06 JAN | OVERLIMIT FEE | $29.00 |
| 2 | 04 FEB | PAST DUE FEE | 29.00 |



### Finance Charges

Please see reverse side for important information

| | Balance rate applied to | Periodic rate | Corresponding rate | FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $3,027.37 | .05658% P | 20.65% | $53.10 |
| CASH | $.00 | .05658% P | 20.65% | $.00 |

ANNUAL PERCENTAGE RATE applied this period     20.65%

---

▼ **PLEASE RETURN PORTION BELOW WITH PAYMENT.** ▼

**Capital**One®

9958

| | |
|---|---|
| New Balance | $3,084.80 |
| Minimum Amount Due | $3,084.80 |
| Payment Due Date | March 04, 2003 |
| Total enclosed | $ |
| Account Number: | 9958 |

Please print mailing address and/or e-mail changes below using blue or black ink.

| | |
|---|---|
| Street | Apt. # |
| City | State | ZIP |
| Home Phone | Alternate Phone |
| Email Address | @ |

Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

#9003632011892138# MAIL ID NUMBER
CARLA A HUBBS

039708

*Please write your account number on your check or money order made payable to Capital One Services and mail in the enclosed envelope.*

**1. How To Avoid A Finance Charge.**

**†a. Grace Period.** You will have a minimum grace period of 25 days without finance charge on new purchases, new balance transfers, new special purchases and new other charges if you pay your total "New Balance," in accordance with the Important Notice for payments below, and in time for it to be credited by your next statement closing date. There is no grace period on cash advances and special transfers. In addition, there is no grace period on any transaction if you do not pay the total "New Balance."

**b. Accruing Finance Charge.** Transactions which are not subject to a grace period are assessed finance charge 1) from the date of the transaction or 2) from the date the transaction is processed to your Account or 3) from the first calendar day of the current billing period. Additionally, if you did not pay the "New Balance" from the previous billing period in full, finance charges continue to accrue to your unpaid balance until the unpaid balance is paid in full. This means that you may still owe finance charges, even if you pay the entire New Balance indicated on the front of your statement by the next statement closing date, but did not do so for the previous month. Unpaid finance charges are added to the applicable segment of your Account.

**†c. Minimum Finance Charge.** For each billing period that your account is subject to a finance charge, a minimum total FINANCE CHARGE of $0.50 will be imposed. If the total finance charge resulting from the application of your periodic rate(s) is less than $0.50, we will subtract that amount from the $0.50 minimum and the difference will be billed to the purchase segment of your account.

**†d. Temporary Reduction in Finance Charge.** We reserve the right to not assess any or all finance charges for any given billing period.

**2. Average Daily Balance (Including New Purchases).**

**a.** Finance charge is calculated by multiplying the daily balance of each segment of your account (e.g., cash advance, purchase, special transfer, and special purchase) by the corresponding daily periodic rate(s) that has been previously disclosed to you. At the end of each day during the billing period, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. Then at the end of the billing period, we add up the results of these daily calculations to arrive at your periodic finance charge for each segment. We add up the results from each segment to arrive at the total periodic finance charge for your account. To get the daily balance for each segment of your account, we take the beginning balance for each segment and add any new transactions and any periodic finance charge calculated on the previous day's balance for that segment. We then subtract any payments or credits posted as of that day that are allocated to that segment. This gives us the separate daily balance for each segment of your account. However, if you paid the New Balance shown on your previous statement in full (or if your new balance was zero or a credit amount), new transactions which post to your purchase or special purchase segments are not added to the daily balances. We calculate the average daily balance by adding all the daily balances together and dividing the sum by the number of the days in the current billing cycle. To calculate your total finance charge, multiply your average daily balance by the daily periodic rate and by the number of days in the billing period. Due to rounding on a daily basis, there may be a slight variance between this calculation and the amount of finance charge actually assessed.

**b.** If the code Z or M appears on the front of this statement next to "Balance Rate Applied To," we multiply the average daily balance of each segment by your monthly periodic rate. To obtain the average daily balance for the period covered by this statement, we take the beginning balance of each segment each day, add any new transactions to each segment, and subtract any payments or credits. (If the code N appears on the front of this statement next to "Balance Rate Applied To," we also subtract any unpaid finance charge included in the balance of each segment.) This gives us the daily balance of each segment. Then, we add up all the daily balances for each segment for the billing period and divide by the total number of days in the billing period. This gives us the average daily balance of each segment.

**3. Annual Percentage Rates (APR).**

**a.** The term "Annual Percentage Rate" may appear as "APR" on the front of this statement.

**b.** If the code P (Prime), L (3-mo. LIBOR), C (Certificate of Deposit), or S (Bankcard Prime) appears on the front of this statement next to the periodic rate(s), the periodic rates and corresponding ANNUAL PERCENTAGE RATES may vary quarterly and may increase or decrease based on the stated indices, as found in The Wall Street Journal, plus the margin previously disclosed to you. These changes will be effective on the first day of your billing period covered by your periodic statement ending in the months January, April, July and October.

**c.** If the code D (Prime), F (1-mo. LIBOR) or G (2-mo. LIBOR Replaced Monthly) appears on the front of your statement next to the periodic rate(s), the periodic rates and corresponding ANNUAL PERCENTAGE RATES may vary monthly and may increase or decrease based on the stated indices, as found in The Wall Street Journal, plus the margin previously disclosed to you. These changes will be effective on the first day of your billing period each month.

**4.** Assessment of Late, Overlimit and Returned Payment Fees. Your account will be assessed no more than two of the fees listed here that occur during any billing period. Under the terms of your customer agreement, we reserve the right to waive or not to assess any fees without prior notification to you without waiving our right to assess the same or similar fees at a later time.

**5.** †Renewing Your Account. If a membership fee appears on the front of this statement, you have 30 days from the date this statement was mailed to you to avoid paying the fee or to have such fee credited to you if you cancel your account. During this period, you may continue to use your account without having to pay the membership fee. To cancel your account, you must notify us by calling our Customer Relations Department and pay your "New Balance" in full (excluding the membership fee) prior to the end of the thirty-day period.

**6.** If You Close Your Account. You can request to close your account by calling our Customer Relations Department. You must destroy your credit card(s) and account access checks, cancel all preauthorized billing, and cease using your account. If you do not cancel preauthorized billing arrangements, we will consider receipt of a charge your authorization to reopen your account. Additionally, your account will not be closed until you pay all amounts you owe us including: any transactions you have authorized, finance charges, past due fees, overlimit fees, returned payment fees, cash advance fees and any other fees assessed to your account. You are responsible for these amounts whether they appear on your account at the time you request to close the account or they are incurred subsequent to your request to close the account. This may result in charges appearing on your account after you have requested the account to be closed or the reopening of

your account if it has already been closed. For example, if you authorized a purchase from a merchant and we receive the transaction from the merchant after your account has been closed, your account will be reopened, the amount of the charge will be added to your account, and you will be responsible for payment. If there is a membership fee for your account, the fee will continue to be charged, to the extent permitted by law, until the account balance has been paid in full as defined above.

**7.** Using Your Account. Your card or account cannot be used in connection with any internet gambling transactions.

**BILLING RIGHTS SUMMARY**
**(In Case Of Errors Or Questions About Your Bill)**
If you think your bill is wrong, or if you need more information on a transaction on bill, write to us on a separate sheet as soon as possible at the address for inquiries shown on the front of this statement. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can call our Customer Relations number, but doing so will not preserve your rights. In your letter, give us the following information: your name and account number, the dollar amount of the suspected error, a description of the error and an explanation, if possible, of why you believe there is an error; or if you need more information, a description of the item you are unsure about. You do not have to pay any amount in question while we are investigating it, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**‡ Special Rule For Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. You have this protection only when the purchase price was more than $50.00 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.) Please remember to sign all correspondence.

* Does not apply to consumer non-credit card accounts

‡ Does not apply to business non-credit card accounts

Capital One supports information privacy protection; see our website at www.capitalone.com.
Capital One is a federally registered service mark of Capital One Financial Corporation. All rights reserved. © 2003 Capital One

O1LGLBAK

39708T

04R10 0 0101 2 ..............

**Important Notice:** Your payment will be credited to your account as of the date we receive it, provided you send the bottom portion of this statement and your check in the enclosed remittance envelope, and your payment is received in our processing center by 3 p.m. Payments addressed to our Virginia or Georgia processing center must be received on a business day by 3:00 p.m. ET. Payments addressed to our Washington processing center must be received on a business day by 3:00 p.m. PT. Please allow at least five (5) business days for postal delivery. Payments received by us at any other location or in another form may not be credited on the day we receive them. Our business days are Monday through Saturday, excluding holidays. Please do not use staples, paper clips, etc. when preparing your payment.

DOS/12-21

Agreement without taking from.

**Changes in Terms.** We may amend or change any part of your Agreement, including the periodic rates and other charges, or add or remove requirements, including adding new requirements of the same or a different nature as the existing requirements in this Agreement at any time. If we do so, we will give you notice if required by law of such amendment or change. Notice will be mailed to you previously had notified you that your records. However, no notice will be mailed if you previously had notified you that your records. Changes to such amendment or change without notice.) Changes to the annual percentage rate(s) will apply to your account balance from the effective date of the charge, whether or not the account balance included items billed to the account before the change date and whether or not you continue to use the account. Changes in fees and other charges will apply to your account from the effective date of the charge.

**Applicable Law.** This Agreement will be governed by Virginia law and Federal law.

**Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

**Lost or Stolen Cards or Account Access Checks.** If your cards or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number shown on the front of your periodic statements. You will not be liable in any amount for unauthorized use of your cards or account access checks.

**Your Billing Address.** You agree to give us written notice of any change in your billing address at least 10 days before the change. Changes may be written in the space provided on the remittance coupon portion of your periodic statement or may be sent to the following address: Capital One, P.O. Box 85015, Richmond, VA 23285-5015. If your account is a joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records.

**Communications.** We may call you (using live operators, automatic dialing devices, or recorded messages) at home or work and those calls will not be considered unsolicited. We may monitor or record any calls we make or receive. We may release information to others regarding the status or history of your account as is more fully discussed in the Capital One privacy policy. A copy of which has been provided to you. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us.

**Cardholder Benefits.** Cardholder benefits may be changed or terminated without notice. The benefits may be provided by third parties; we are not liable for such benefits or for the actions or omissions of the third parties.

**U.S. Currency.** If you make a purchase or cash advance in foreign currency, the transaction will be converted into U.S. dollars using Visa or MasterCard regulations and conversion procedures in effect at the time Visa or MasterCard may increase the conversion rate and keep this increased amount. The rate in effect on the conversion date may differ from the rate used on the transaction date.

**ARBITRATION:**

You and we agree that either you or us may, at either party's sole election, require that any Claim (as defined below) be resolved by binding arbitration.

IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, INCLUDING THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION. THE FEES ASSOCIATED WITH ARBITRATION MAY BE HIGHER THAN THE FEES ASSOCIATED WITH COURT PROCEEDINGS.

**Special Definitions for this Arbitration Provision.** For the purposes of this arbitration provision ("Arbitration Provision"), the following definitions shall apply in addition to the definitions set forth in this Customer Agreement ("Agreement"):

"We," "us" and "our" mean the owner of your account (Capital One Bank or Capital One, F.S.B.), its parent, and their direct and indirect subsidiaries and affiliates, as well as all of their respective employees, officers, directors, licensees, predecessors, successors, and assigns.

"Claim" means any claim, controversy, or dispute of any kind of nature between you and us.

a. *This definition includes, without limitation, any Claim that in any way arises from or relates to:*

- this Agreement and any of its terms (including any prior agreements between you and us or between you and any other entity from which we acquired your account)
- this Arbitration Provision (including whether any Claim is subject to arbitration)
- the establishment, operation, or termination of your account
- any disclosures, advertisements, promotions, or other communications relating to your account, whether they occurred before or after your account was opened
- any transactions or attempted transactions involving your account
- any billing or collections matters relating to your account
- any posting of transactions (including payments or credits) to your account
- any goods or services charged to your account
- any fees, interest or other charges assessed to your account, or their calculation
- any products, services, or benefits programs related to or offered in connection with your account (including any insurance, debt cancellation, or extended service contracts and any programs, rebates, rewards, sweepstakes, memberships, discounts, or coupons) whether or not we offered, introduced, sold, or provided them
- our receipt, use, or disclosure of any information about you or your account
- any other matters relating to your account or your relationship with us.

b. *This definition also includes, without limitation, any Claim:*

- regardless of how or when it is brought (for example, as an initial claim, counterclaim, cross-claim, interpleading, or third-party claim)
- based on any theory of relief or damages (including money damages and any form of specific performance or injunctive, declaratory, or other equitable relief)
- based on any theory of law or equity (including contract, tort, fraud, constitution, statute, regulation, ordinance, or wrongful acts or omissions of any type, whether negligent, reckless, or intentional)
- made by you or by anyone connected with you or claiming through or for you (including a co-applicant or authorized user of your account, your agent, your representative, your heirs, or a trustee in bankruptcy)

- for which we may be directly or indirectly liable under any theory, including respondeat superior or agency (even if we are not properly named at the time the Claim is made)
- now in existence or that may arise in the future, regardless of when the facts and circumstances that give rise to the Claim occurred or when the Claim accrued
- made as part of a class action, private attorney general action, or other representative or collective action, which Claim shall proceed on an individual basis as set forth more fully in this Arbitration Provision.

**Arbitration Administrators.** One of the following arbitration administrators ("Administrator" or, collectively, "Administrators") will administer the arbitration:

| JAMS | American Arbitration Ass'n | National Arbitration Forum |
|---|---|---|
| 1920 Main St., Ste. 300 | 335 Madison Ave., Floor 10 | P.O. Box 50191 |
| Irvine, CA 92610 | New York, NY 10017-4605 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arbitration-forum.com |

You may contact any of the Administrators to obtain information about arbitration, arbitration rules and procedures, fee schedules, and claim forms.

**Election and Initiation of Arbitration.** You or we may elect arbitration under this Arbitration Provision with respect to any Claim, even if the Claim is part of a lawsuit brought in court. You or we may make a motion or request in court to compel arbitration of any Claim brought as part of any lawsuit. We will not elect or initiate arbitration of any Claim brought in a small claims court (or the equivalent), so long as the Claim remains in that court, is made solely on behalf of an individual or joint account holder, and is not made as part of a class action, private attorney general action, or other representative or collective action.

You and we must follow the rules of the Administrators to initiate arbitration. If you initiate arbitration, you may choose one of the Administrators, and you must send us any notice required by the Administrator to P.O. Box 85550, Richmond, VA 23285-5550. If we initiate arbitration, we will choose one of the Administrators, and we will mail you any notice required by the Administrator to your last-known billing address. If we have initiated arbitration, we will change the Administrator all your notices if you notify us in writing at the above address within fifteen days of the date of any notice we send you of our initiation of arbitration.

**Procedures and Law Applicable in Arbitration.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the Federal Arbitration Act (the "FAA"). Questions about whether any Claim is subject to arbitration shall be resolved by interpreting this Arbitration Provision in the broadest way it may be enforced, consistent with the FAA and the terms of this Arbitration Provision. The arbitrator will apply substantive law consistent with the FAA and applicable statutes of limitations. The arbitrator may award any damages or other relief permitted by applicable substantive law, but the award shall determine the rights and obligations of only the named parties and only with respect to the Claims in arbitration. The rules and procedures of the Administrator, which you may obtain from the Administrator, shall govern the arbitration unless they conflict with this Arbitration Provision, in which case this Arbitration Provision will apply. The arbitrator will not be bound by, and this Arbitration Provision will not be subject to, the federal, state, or local rules of procedure and evidence that would apply if a court, or in state or local laws that relate to arbitration proceedings. You or we may have a hearing in arbitration. Any arbitration hearing that you attend in person will take place at a location in the federal judicial district that includes your last-known billing address or at some other place upon which you and we agree. You or we may be represented by counsel. If you or we request, the arbitrator will honor claims of privilege recognized under applicable law and will use best efforts to protect confidential information (including through the use of protective orders). The arbitrator will make any award in writing and, at the timely request of either party, will provide a written statement of reasons for the award.

**Costs.** The party initiating arbitration will pay the initial filing fee. You may seek a waiver of the initial filing fee or any of the Administrator's other fees (collectively, "Administrator's Fees") under any applicable rules of the Administrator. If you seek, but do not qualify for, a waiver, we will consider any written request by you for us to pay or reimburse you for all or part of the Administrator's Fees. We also will pay or reimburse you for all or part of the Administrator's Fees if the arbitrator determines there is good reason for us to do so. We will pay any fees and costs we are required to pay by law. Otherwise, and except as provided in this Agreement, you and we will bear all of our respective fees and costs (including the Administrator's fees and the fees and costs relating to attorneys, experts, and witnesses). Regardless of who prevails. Allocation of fees and costs relating to appeals in arbitration will be handled in the same manner.

**No Consolidation or Joinder of Parties.** The arbitration of any Claim must proceed on an individual basis, even if the Claim has been asserted in a court as a class action, private attorney general action, or other representative or collective action. Unless all parties consent, neither you nor we may join, consolidate, or otherwise bring Claims related to two or more accounts, individuals, or account holders in the same arbitration. Also, unless all parties consent, neither you nor we may pursue a class action, private attorney general action, or other representative or collective action in arbitration, nor may you or we pursue such a Claim in Court if any party has elected arbitration. You will not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim as to which arbitration has been elected.

**Judgment, Enforcement, Finality, and Appeal.** The arbitrator's decision will be final and binding after fifteen days unless you or we seek an appeal of the award by making a written request to the Administrator. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration, and will make decisions based on the vote of the majority. The panel's decision will be final and binding. Any final decision of the arbitrator or of the appeal panel is subject to judicial review only as set forth under the FAA. An award in arbitration will be enforceable under the FAA by any court having jurisdiction.

**Miscellaneous, Waiver, Severability, Survival.** If you or we do not elect arbitration of otherwise enforce this Arbitration Provision in connection with any particular Claim, you or we will not waive any rights to require arbitration in connection with that or any other Claim. This Arbitration Provision shall survive: (i) suspension, termination, closure, or changes of this Agreement, your account, and your relationship with us; (ii) the bankruptcy or insolvency of any party; and (iii) any transfer of your account, or any amounts owed on your account, to any other person or entity. If any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern.

© 2002 Capital One Services, Inc. Capital One is a federally registered service mark. All rights reserved.

# APPENDIX C

# WELTMAN, WEINBERG & REIS CO., L.P.A.

**BROOKLYN HTS, OH**
216.739.5100

**CHICAGO, IL**
312.782.9676

**CINCINNATI, OH**
513.723.2200

**CLEVELAND, OH**
216.685.1000

**COLUMBUS, OH**
614.228.7272

Attorneys at Law
180 N. Lasalle
Suite 2400
Chicago, Il 60601
(312) 782-9676
Mon-Fri 8am-5pm CST
www.weltman.com

**DETROIT, MI**
248.362.6100

**GROVE CITY, OH**
614.801.2600

**PHILADELPHIA, PA**
215.599.1500

**PITTSBURGH, PA**
412.434.7955

September 28, 2009

CARLA A HUBBS 



RE:     TRAK AMERICA
Account No.: 9958
Balance Due: $9,431.99
WWR File No.: 5412302

Dear CARLA A HUBBS:

As you are aware, this firm has filed a lawsuit against you on behalf of the client referenced above. We recently learned that you were properly served with a copy of a complaint.

At this point, we would like to work with you towards the resolution of this lawsuit without the necessity of a court hearing. Please call us toll free at 1-800-406-5419 to discuss this case.

Thank you and we look forward to hearing from you soon.

Sincerely,

Weltman, Weinberg & Reis Co., L.P.A.

This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.

235 / 9523484